IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEPHEN WASKO, JR.,            :
        Plaintiff,    :
    v.                       :   Case No. 3:04-cv-223-KRG-KAP
GENERAL KINETICS, INC.,        :
        Defendant     :

## Report and Recommendation

### Recommendation

Plaintiff Stephen Wasko filed a complaint alleging that his employer, defendant General Kinetics, Inc., fired him on March 15, 2002, due to age and disability discrimination. Pending is defendant's motion for summary judgment. docket no. 17. Defendant's motion should be granted.

### Report

I.

The factual record is not substantially in dispute but taking the facts, where they are contested, in the version favorable to the plaintiff, the record shows that Stephen Wasko worked for General Kinetics as a machinist until March 15, 2002, when he was fired for refusal to obey an order. Wasko had been at General Kinetics for 13 years; he had previously worked for 17 years at Davis Brake Beam as a machinist. On Friday, March 1, 2002, Wasko was operating a milling machine, and was ordered by Bruce Maldet, his supervisor, to drill holes in the ends of and tap (that is, machine threads for screws) 44 steel bars, each of which weighed about 22 pounds. Wasko depo. at 49-52. The job would have required Wasko to lift the bars from a pallet onto his machine

table (the height of the lift is in dispute and ranged from a few inches to about three feet, see Caffrey depo. at 25, Wasko depo. at 49-50: I accept Wasko's contention that he would have had to lift the bars from floor level), and flip the bars end for end as each stage of the job was completed. Wasko was cautious about straining his back by heavy or repetitive lifting because he had suffered a work related back injury at some point in the mid to late 1990s while working for General Kinetics. Wasko had at that time missed eight weeks of work and undergone physical therapy. Wasko's physicians told him that he had degenerative disc disease in his lumbar spine, and in his experience Wasko found that a day of pushing a lawnmower or a couple of hours of shoveling snow would be enough to put him out of commission for the subsequent day or two. Wasko depo. at 46-49. Wasko had been given similar work assignments "several times" (less than ten times) in the years since his injury, and on each occasion he had begun the work, proceeded until his back gave out, and then went home early. Wasko depo. at 28-29. According to Maldet, Wasko missed work frequently for a variety of medical reasons, but there were never any negative repercussions from leaving early, so long as he told a supervisor he was sick. Maldet depo. at 12, 17. According to Wasko, he had never even needed to provide a doctor's excuse. Wasko depo. at 78-79. Maldet confirmed that a doctor's excuse was only necessary to

be assigned light duty or when an employee would miss work for more than three days.  Maldet depo. at 13-14.

On the evening of March 1, 2002, Wasko felt that lifting the bars would injure him, and he told Maldet that he would not do the assigned work.  Wasko told Maldet it was too much for his back.  Wasko depo. at 29.  At the time, although Wasko's back problems were known to his supervisors, Wasko depo. at 63-65, Wasko was under no medical restriction of any kind at General Kinetics.  Wasko depo. at 36.  Wasko testified that on March 1, 2002, he was not offered any help and that he did not ask for help in performing the assigned task because his previous experience had been that requests for help would be refused.  Wasko depo. at 30-31.  Wasko and Maldet disagree about how long the job would have taken Wasko, Wasko claiming the job would have taken all shift, Wasko depo. at 51 and Maldet claiming a few hours at 5 minutes per bar, Maldet depo. at 31, but even Wasko does not claim Maldet ordered him to drill all the bars in one shift or even that he was given a deadline.  Wasko testified that several years earlier when his back was bothering him, Maldet had switched Wasko's work assignment from a large milling machine to a smaller one which required less lifting.  Wasko depo. at 56-57.  Maldet testified that he had offered Wasko assistance in moving the bars to the level of the milling machine, Maldet depo. at 32, 34, but for purposes of this

motion I am required to accept Wasko's recollection and disbelieve Maldet's recollection.

On March 1, 2002, Maldet told Wasko to go home, and may or may not have told Wasko to come back with a doctor's excuse. Compare Wasko depo. at 30-31 with Wasko depo. at 34-35. Wasko returned to work on Monday, March 4, 2002, and the same job was waiting for him. He again told Maldet that he would not do the job, and this time he was told to go home and not to come back until he obtained a doctor's excuse limiting him from lifting. Maldet spoke to Wasko in the presence of Wasko's union representative, Paul Assia, and Assia urged Wasko at least to try to do the work. Wasko depo. at 36. Wasko attempted to obtain a doctor's note from his family physician, Stephen Hoffman, D.O., on March 4, 2002, and was told he could pick it up the next day. Doctor Hoffman was tied up at a local hospital on March 5, 2002, so Wasko was not able to pick up the note until March 6, 2002. Wasko did not go to work or call in to explain why he had not obtained the note on March 5, 2002. Wasko depo. at 39. On Wednesday, March 6, 2002, Wasko returned to work with the note included in the record at docket no. 17-3 at 7. The note, dated March 4, 2002, states that Hoffman has treated Wasko for years and confirms that Wasko has chronic lumbar strain, and advises that Wasko is "restricted in his work profile from lifting more than fifty pounds and should not have prolonged episodes greater than

4

two hours per day of climbing, crawling, stooping or bending." Hoffman then continued: "I otherwise find this gentleman medically unrestricted for employment."

On March 6, 2002, Mike Pohl, the plant foreman, took the doctor's excuse, made a couple of copies and returned the excuse to Wasko, and told him to leave the premises. Wasko was formally terminated for insubordination by Pat Caffrey, the plant manager, on March 15, 2002; a union grievance proceeding was unsuccessful in getting Wasko reinstated. Wasko depo. at 41-42; Maldet depo. at 27-28.

Wasko believes he was terminated for refusing the job assignment. He asserts that this is disability discrimination because General Kinetics set him up for discharge by giving him an assignment that his supervisors knew he could not do because of his back condition. Wasko asserts that General Kinetics also wanted to get rid of him because of his age. Wasko was born in 1947, and when fired from General Kinetics at age 55, Wasko believed that he was the oldest machinist there. Wasko depo. at 60-62, 74. Wasko had seen other older employees being fired, but had no idea why other employees with long years of service were terminated. Wasko depo. at 59-61. Wasko did not know whether anyone was hired to replace him. Wasko depo. 61-62.

5

II.

Proof of a reasonable accommodation claim against an employer under the Americans with Disabilities Act, 42 U.S.C.§ 12101 et seq., requires an employee plaintiff like Wasko to show that: 1) he has a disability; 2) he can perform his job with or without reasonable accommodation by the defendant employer; and 3) the employer failed to provide a reasonable accommodation. Skerski v. Time Warner Cable Co., 257 F.3d 273, 284 (3d Cir.2001). Implicit in the third element is the requirement that an employee must request provision of a reasonable accommodation. See Conneen v. MBNA America Bank, N.A., 334 F.3d 318, 330 (3d Cir.2003), citing 29 C.F.R.§ 1630, App. 1630.9 at 359. An employer has a duty to enter into an interactive process to find an appropriate accommodation for an employee, but it is the duty of the employee to initiate the accommodation process. Taylor v. Phoenixville School District, 184 F.3d 296, 312-13 (3d Cir.1999) ("Employers cannot assume employees are disabled and need accommodations.")

Assuming for purposes of this motion that Wasko's back condition qualifies as a disability, Wasko was obliged to request an accommodation. Taking the version of the evidence more favorable to Wasko, Wasko was not asked for a doctor's excuse on March 1, 2002. Wasko admits that he was asked for a doctor's excuse on March 4, 2002, and that he did not report to work or explain his call off on March 5, 2002. On March 6, 2002, the

6

doctor's excuse Wasko offered General Kinetics only limited him from lifting 50 pounds or more, and Wasko himself estimated the weight of the bars at half that. Wasko depo. at 52. Wasko believed that the repetitive stress of lifting would injure him, but his doctor's excuse limited him to two hours of lifting, and as his supervisor pointed out, though each bar had to be lifted twice, lifting the bars would have taken only seconds, with the milling process taking place between lifts. Maldet depo. at 33. But even construing Doctor Hoffman's note as limiting Wasko to two hours of drilling the corner bars, not two hours of lifting, there is no dispute that Wasko refused even to begin any of the assigned work. Under the circumstances, and disregarding for purposes of this motion Maldet's testimony that he <u>sua sponte</u> offered Wasko help lifting the bars, General Kinetics' request that Wasko document his disability satisfied any duty it had under the ADA to engage in an interactive process to accommodate Wasko. Without a request from Wasko for any accommodation or even an explanation why Doctor Hoffman's restrictions were incompatible with the job assigned, Wasko's refusal to begin an assigned job could properly be regarded by his employer as insubordination. Summary judgment should be granted to General Kinetics on the ADA claim.

III.

To prove a <u>prima facie</u> claim under the Age Discrimination in Employment Act, 29 U.S.C.§ 621 <u>et seq.</u>, where there is no direct

7

evidence of age discrimination, a plaintiff must establish that he is at least 40 years of age, that he is qualified for the position, that he suffered an adverse employment action, and that the employer treated more favorably another person who was sufficiently younger to permit an inference of age discrimination. Elwell v. PP& L, Inc. 47 Fed.Appx. 183, 186 (3d Cir.2002). See also Showalter v. University of Pittsburgh Med. Ctr., 190 F.3d 231, 234 (3d Cir.1999); Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 897 (3d Cir. 1987). If the plaintiff establishes a prima facie claim, the employer must proffer a nondiscriminatory reason for its action. See generally McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

Evidence relevant to the more favorable treatment element varies depending on the nature of the adverse employment decision alleged: here, plaintiff alleges he was fired after refusing to perform an assigned job. He must present evidence that a younger person was treated more favorably by not being fired in similar circumstances. Plaintiff does not attempt to do so. Nor does plaintiff provide any evidentiary support for the claim that anyone, much less a younger employee, replaced him. See Maldet depo. at 30; Caffrey depo. at 21-22. Plaintiff presents his unsupported recollection that over the period he was employed by General Kinetics some older employees were terminated and younger

8

ones hired, but that is not remotely evidence of age discrimination. Plaintiff offers no evidence that any individual employee was discriminated against, nor does he offer statistical evidence that the pattern of hiring and firing at General Kinetics shows such a disproportionate impact on older employees that an intent to discriminate might be inferred.

Recognizing this, Wasko claims in the alternative that the more favorable treatment element of the *prima facie* case is satisfied because even though General Kinetics did not hire anyone to replace him, docket no. 21, Plaintiff's Brief at 8, Wasko's duties were spread among the remaining employees, who were younger. Id. at 16 ("[General Kinetics] wanted to replace [Wasko] with a younger person already in their employment.") Evidence of retention of younger employees would tend to prove a *prima facie* case when an older employee is discharged in a reduction in force, but not in a case where the employee is fired for insubordination. If it were, that would imply that an employer *prima facie* violates the ADEA every time it fires an employee over 40 unless there were no retained employees younger than the terminated employee. That is not what the ADEA provides.

Summary judgment should be granted to General Kinetics on the ADEA claim as well.

9

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: 6/22/07

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record